**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leslie Grey Vanaman, | No. CV-17-00222-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Molinar, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Leslie Grey Vanaman's Motion to Amend Complaint, filed on March 1, 2018. (Doc. 23.) The motion is fully briefed. (Docs. 26, 30.) Also pending before the Court are Defendants' Motion to Dismiss, filed May 4, 2018 (doc. 35.), and Plaintiff's Motion to Strike the Motion to Dismiss, which appears to be a response to Defendants' Motion to Dismiss. (Doc. 38.)

For the reasons outlined below, the Court will grant Plaintiff's Motion to Amend in part. (Doc. 23.)

## FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2017, Plaintiff Leslie Grey Vanaman, who is confined in the United States Penitentiary-Tucson (USP-Tucson) in Tucson, Arizona, filed a pro se civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1.) The Court's screening order of June 14, 2017 allowed three counts asserting claims for monetary damages to proceed.[1] (Doc. 5.)

---

[1] The original Complaint filed at Docket 1 is the operative complaint in this matter. Plaintiff has requested leave to amend his Complaint twice prior to the pending

However, shortly after the June 14 screening order was issued, the Supreme Court decided *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843 (2017), which cautions courts against recognizing *Bivens* claims in new contexts not already recognized by the Supreme Court. Plaintiff now seeks to amend his complaint to avoid dismissal under *Abbasi*. Plaintiff seeks to reassert his allegations as arising under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B), and 28 U.S.C. §§ 1331, 1361, 2201(a), and 2202. Plaintiff also requests the Court to appoint counsel in this matter. (Doc. 23, p. 2.)

In his pending proposed First Amended Complaint (FAC), Plaintiff re-alleges that on June 1, 2016, the mailroom at USP-Tucson, which is supervised by Defendant Molinar, flagged Plaintiff's May 2016 issue of Cruising World for "warden review" because it contained an image or images of "young children partially clothed." (Doc. 23-1 at 5A-5B.) Defendant Shartle, then warden of USP-Tucson, subsequently rejected the magazine pursuant to USP-Tucson's Institution Supplement TCX 5324.10B, concluding that it contained an image "thought to threaten the security and/or good order of the institution and/or it may facilitate criminal activity." (*Id*.)

The FAC contains six proposed Counts. In Count 1, Plaintiff adds the new allegation that TCX 5324.10B is so broad as to allow prison officials to arbitrarily confiscate materials in violation of his rights under the First Amendment. (Doc. 23-1 at 3A-3B.) In Count 2, Plaintiff adds the new allegation that because TCX 5324.10B may be used to arbitrarily confiscate any media with children in it as contraband, the policy discriminates against Vanaman, as a member of a class of sex-offender inmates housed at USP-Tucson, in violation of his right to equal protection under the Fifth Amendment. (Doc. 23-1 at 4A-4B.) Counts 3-5 are identical to Counts 3-5 of Plaintiff's original Complaint. (*See* Doc. 1.) These counts assert that Defendant Molinar violated Plaintiff's First Amendment right to read a magazine by rejecting it for warden review (Count 3); that Defendant Shartle violated Plaintiff's First Amendment right to read a magazine by

motion. (*See* docs. 7, 9.) The Court has denied both requests. (*See* docs. 8, 21.)

rejecting it (Count 4); and that Defendant Shartle discriminated against Plaintiff, as a member of a class of convicted sex offenders, by rejecting a magazine that would be permissible in an institution housing individuals convicted of crimes other than sex offenses (Count 5). (Doc. 23-1 at 5A-5G.) Finally, Plaintiff asserts a new claim in Count 6 that the United States, by and through the Bureau of Prisons, negligently established the TCX 5324.10B in contravention of Plaintiff's constitutional rights. (Doc. 23-1 at 5H.)

## ANALYSIS

### I.       Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a plausible claim for relief, a court must "draw on its judicial experience and common sense" and assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 679, 681. However, courts must "construe pro se filings

liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. Plaintiff Fails to State a Cognizable Claim under *Bivens*

The *Abbasi* court cautioned against expanding the *Bivens* remedy, and set forth a two-step test to determine whether a *Bivens* claim should proceed. 137 S. Ct. at 1857. First, a court must consider whether the claim at issue extends *Bivens* in a new context from previously established *Bivens* cases. If so, the court must determine whether there are "special factors counselling hesitation" in expanding *Bivens* to that new context. *Id.* at 1857, 1859-60. Applying this test, the Court concludes that Plaintiff's *Bivens* claims must be dismissed.

### A. Plaintiff's claims for damages arising under the First and Fifth Amendments would extend *Bivens* in a new context.

A case presents a new *Bivens* context if the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Id.* at 1859.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. This list is not exhaustive, and the "new-context inquiry is easily satisfied." *Id.* at 1865.

The Supreme Court has only recognized a *Bivens* claim in a few instances. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 8 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause). "These three cases . . . represent the only instances in

which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

In Counts 1-5, Plaintiff claims that Defendants Molinar and Shartle rejected his issue of *Crusing World* in violation of his First and Fifth Amendment rights. Insofar as the FAC asserts these claims pursuant to *Bivens*, the claims arise in a new context because are substantially and meaningfully different from the three types of *Bivens* claims recognized by the Supreme Court. The Supreme Court has never concluded that a First Amendment *Bivens* cause of action exists, even though it has assumed such a cause of action for analytical purposes. *See Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case."); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Thus, Plaintiff's First Amendment claims arise in a new context.

Similarly, Plaintiff's Fifth Amendment *Bivens* claims arise in a new context because it is substantially and meaningfully different from the Fifth Amendment due process claim against a Congressman for firing his female secretary at issue in *Davis*, 442 U.S. at 230. Plaintiff's claims stem from his allegations that TCX 5324.10B, and prison officials' application of the policy, deny equal protection to a protected class of inmates. Plaintiff's claim does not fall within the scope of *Bivens* claims expressly recognized by the Supreme Court. Therefore, it follows that Plaintiff's Fifth Amendment claims present a new context.

**B.** **Special factors counsel hesitation in expanding *Bivens* to Plaintiff's allegations in proposed Counts 1-5**

If the claim at issue extends *Bivens* in a new context, a court must analyze whether there are "special factors counselling hesitation" in expanding *Bivens*. *Zigler*, 135 S. Ct. at 1857. When performing the special-factors analysis, courts must consider "'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be

Congress. When an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'" *Id.* (quoting *Bush*, 462 U.S. at 380).

In conducting the special factors inquiry, the court "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.*

> [I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system of enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III.

*Id.* at 1858. This requires courts to assess the impact on governmental operations systemwide, including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.*

"Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." *Buenrostro v. Fajardo*, 2017 WL 6033469, at *3 (E.D. Cal. 2017). Congress passed the Prison Litigation Reform Act ("PLRA"), which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation." *Rager v. Augustine*, 2017 WL 6627416, at *18 (N.D. Fla. 2017), *report and recommendation adopted*, 2017 WL 6627784 (N.D. Fla. 2017). Indeed, the Supreme Court noted that:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citation omitted). "Further evidence that Congress does not want a damages remedy for First Amendment retaliation or access-to-the-courts claims filed by prisoners is the provision in [42 U.S.C.] § 1997e which limits a prisoner's recovery for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *Rager*, 2017 WL 6627416, at \*19.

Additionally, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Zigler*, 135 S. Ct. at 1858. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863. Here, Plaintiff has alternative remedies available to him because, at a minimum, the Bureau of Prisons has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); s*ee also Buenrostro*, 2017 WL 6033469, at \*3 (where inmate alleged violations of his Fifth Amendment due process rights and retaliation in violation of the First Amendment, "[i]t is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief"); *Ziglar*, 137 S. Ct. at 1865 ("And there might have been alternative remedies available here, for example, a writ of habeas corpus, an injunction requiring the warden to bring his prison into compliance with the regulations discussed above; or some other form of equitable relief."); *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) ("A *Bivens* action is not necessary in suits . . . which seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims."). In fact, the First Amended Complaint advances all of Plaintiff's allegations under remedies alternate to *Bivens*, including the APA and 28 U.S.C. § 1331. Based on special factors that counsel hesitation and the existence of alternative remedies, the Court declines to find an implied *Bivens* cause of action here.

//

**III. Claims for Injunctive Relief Under 28 U.S.C. § 1331 in Counts 1-5**

Even if Plaintiff cannot seek monetary damages pursuant to *Bivens*, he may still seek declaratory or injunctive relief pursuant to 28 U.S.C. § 1331, assuming he has stated a claim. *See Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1232 (10th Cir. 2005) ("Section 1331 provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law. No more specific statutory basis is required."); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution").

Counts 1-5 state constitutional claims sufficient to seek equitable relief under 28 U.S.C. § 1331. Plaintiff alleges that by denying him issues of the *Cruising World* magazine, the Bureau of Prisons and its officials violated his rights under the First Amendment and discriminated against him, as a member of a class of convicted sex offenders residing in USP-Tucson, in contravention of the Fifth Amendment equal protection clause. (Doc. 23-1 at 3A-4C.) Thus, the Court will require Defendant Rhodes to answer Plaintiff's claims for equitable relief in Counts 1, 2, 4, and 5. It will similarly require Defendant Molinar to answer Plaintiff's claims for equitable relief in Count 3.

**IV. Administrative Procedure Act Claims in Counts 1-2**

The APA provides a cause of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *see also Webster v. Doe*, 486 U.S. 592, 604 (1988).

Count 1 of the FAC alleges that TCX 5324.10B is so broad as to allow prison officials to arbitrarily confiscate materials in violation of his rights under the First Amendment. (Doc. 23-1 at 3A-3B.) Count 2 alleges that because TCX 5324.10B may be used to arbitrarily confiscate any media with children in it as contraband, the policy discriminates against Vanaman, as a member of a class of sex-offender inmates housed at USP-Tucson, in violation of his right to equal protection under the Fifth Amendment. Although it is not entirely clear whether the APA is applicable here, the Court, in the

interest of justice, will require the Bureau of Prisons to answer the APA claims in Counts 1-2.[2] *See United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008) ("[W]here an action is committed to absolute agency discretion by law, . . . courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." (quoting *Guadamuz v. Bowen*, 859 F.2d 762, 767 (9th Cir. 1988))). The Court will construe the agency Bureau of Prisons as having been named as Defendant in this matter.

## V. The Court will Dismiss the FTCA Claim in Count 6

The FTCA provides a waiver of sovereign immunity for tortious acts of a federal agency's employees if the same torts committed by that person in the employ of a private party would have given rise to liability under state law. 28 U.S.C. § 1346(b); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994).

In Count 6, Plaintiff alleges that that the United States, by and through the Bureau of Prisons, negligently established the TCX 5324.10B in contravention of Plaintiff's constitutional rights. This allegation states a constitutional tort claim against the United States, by and through the BOP as a federal agency. Constitutional torts are founded on federal, not state law. "Federal district courts have no jurisdiction over the United States where claims allege constitutional torts." *Pereira v. United States Postal Service*, 964 F.2d 873, 876 (9th Cir. 1992)*; see also Meyer*, 510 U.S. at 477 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). Moreover, Plaintiff's deployment of tort law terms such as negligence and duty does not alter the constitutional nature of his claims. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343 n.2 (9th Cir. 1996) ("The label that a plaintiff places on his pleadings, however,

---

[2] Plaintiff also cites 28 U.S.C. § 1361 as a basis for relief. Mandamus relief pursuant to 28 U.S.C. § 1361 is unavailable here. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084–85 (9th Cir. 2003) (internal citations omitted). As discussed herein, Plaintiff has adequate alternative remedies for challenging the BOP policies. Moreover, the officials' duty to apply the policies are not nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt.

does not determine the nature of his cause of action.")  Thus, the Court will dismiss Count 6 from the FAC.

## VI.    Motion to Appoint Counsel

28 U.S.C. § 1915(e)(1) confers on the courts the discretion to "request" counsel to represent an indigent civil litigant, but this circuit has limited the exercise of that power to "exceptional circumstances," based upon such factors as the likelihood of success on the merits and the ability of the plaintiff to articulate his claims in light of their complexity. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990).

Plaintiff requests that the Court appoint counsel to represent him in this case in light of the pending motion to dismiss (doc. 32) and the complexity of litigating cases under *Bivens* after the decision in *Abbasi*.  The Court previously denied Plaintiff's request for counsel which asserted the same bases for appointment. (Doc. 36.)  The circumstances have not changed sufficiently to cause the Court to reconsider that decision.  Plaintiff has not demonstrated exceptional circumstances. In addition, Plaintiff's filings in this matter demonstrate his ability to articulate his claims.

## VII.    Defendants' Motion to Dismiss Pursuant to *Bivens* is Moot

On May 4, 2018, Defendants file a Motion to Dismiss the remaining counts in Plaintiff's Complaint, all of which asserted claims for damages under *Bivens*. (Doc. 35.) Defendants argued that Plaintiff's remaining counts failed to state a claim after *Abbasi*. (Doc. 35 at 2-8.)  Alternatively, Defendants argued that Plaintiff's claims for damages against Defendants Shartle and Molinar were subject to the defense of qualified immunity. (Doc. 35 at 9.)  Because the Court will dismiss all claims from Plaintiff's complaint that request damages, it will deny Defendants' motion to dismiss as moot.

## CONCLUSION

Plaintiff has named the United States and Warden J.T. Shartle as defendants in his action.  Pursuant to Fed. R. Civ. P. 25(d), the Court will substitute current Warden R.L. Rhodes for former Warden Shartle.  Furthermore, the Court will construe the complaint as naming the Bureau of Prisons as a party with respect to Plaintiff's APA claims.

For the foregoing reasons, the Court will grant Plaintiff's Motion to Amend in part. The Court will direct Defendant R.L. Rhodes, Warden at United States Penitentiary - Tucson, or another designated agent for the Bureau of Prisons, to file an answer as to Counts 1, 2, 4, and 5, as discussed above. The Court will require Defendant Molinar to file an answer to Count 3.

This Order construes the Bureau of Prisons as a party with respect to the APA claims brought in Counts 1 and 2. Fed. R. Civ. P. 4(i)(2) directs parties to serve a federal agency by serving the United States and sending a copy of the summons and the complaint by registered or certified mail to the agency. All of these requirements for service of the Bureau of Prisons have occurred. In August 2017, service was executed upon the United States Attorney General, the United States Attorney's Office, and J.T. Shartle, an officer of the Bureau of Prisons. (*See* Docs. 10, 11, 12, 13.) Therefore, it appears that all named defendants have been served in this matter. The Court will order the BOP to file an Answer to Counts 1 and 2 within fourteen (14) days of the date of this order, pursuant to Fed. R. Civ. P. 15(a)(3) and Fed. R. Civ. P. 12(a)(4)(A). Accordingly,

IT IS ORDERED that Plaintiff's motion to amend is GRANTED in part and DENIED in part (Doc. 23). The Clerk of Court is DIRECTED to file the document attached to Plaintiff's Motion to Amend (Doc. 23-1) as Plaintiff's First Amended Complaint.

An "amended pleading supersedes the original pleading." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990). After amendment, the Court will treat the original complaints as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in an amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

IT IS FURTHER ORDERED that Plaintiff's request to appoint counsel is DENIED (Doc. 23).

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss the Second Amended Complaint is DENIED as moot (Doc. 35).

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike the Motion to Dismiss is DENIED as moot (Doc. 38).

IT IS FURTHER ORDERED that the Clerk of Court is DIRECTED to substitute Warden R.L. Rhodes as a named defendant in place of Warden Shartle.

IT IS FURTHER ORDERED THAT Defendant Bureau of Prisons shall file a responsive pleading to Counts 1-2; Defendant Molinar shall file a responsive pleading to Count 3; and Defendant Rhodes shall file a responsive pleading to Counts 1-2 and 4-5 within fourteen (14) days of the date of this order, pursuant to Fed. R. Civ. P. 15(a)(3) and Fed. R. Civ. P. 12(a)(4)(A).

Dated this 28th day of September, 2018.


Honorable Jennifer G. Zipps
United States District Judge